**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | |
| JAMES HARTMAN, | Civil Action No. 15-7093 (ES) |
| Chapter 13 Debtor. | |
| | |
| JAMES HARTMAN, | ON APPEAL FROM ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY |
| Appellant, | [Adversary Proceeding Case No. No. 15-01968 (JKS)] |
| v. | |
| WELLS FARGO BANK, N.A. D/B/A, AMERICA'S SERVICING COMPANY, U.S. BANK N.A. AS TRUSTEE FOR RESIDENTIAL ASSET SECURITIES CORPORATION, HOME EQUITY MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2005-EMX5, | MEMORANDUM OPINION |
| Appellees. | |

**SALAS, DISTRICT JUDGE**

James Hartman ("Hartman," or "Appellant") appeals an order of the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), which was entered in an adversary proceeding.[1] (*See* D.E. Nos. 1 & 4). The Bankruptcy Court dismissed Hartman's

---

[1] "Federal Rule of Bankruptcy Procedure 7001 sets forth matters that may only be resolved through an 'adversary proceeding,' . . . ." *In re Mansaray-Ruffin*, 530 F.3d 230, 234 (3d Cir. 2008) (citation omitted). "An adversary proceeding is essentially a self-contained trial—still within the original bankruptcy case—in which a panoply of additional procedures apply." *Id.*; *see also In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 204 n.11 (3d Cir. 1995) ("Disputes litigated in the bankruptcy court are divided into adversary proceedings and contested matters. Ten types of disputes are designated as adversary proceedings in Bankruptcy Rule 7001. . . . Adversary proceedings are

adversary complaint upon resolving a motion to dismiss in favor of Wells Fargo Bank, N.A., d/b/a America's Servicing Company and U.S. Bank, N.A., as Trustee for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EMX5 (collectively, "Wells Fargo" or "Appellees"). (*See* D.E. No. 4-2 at A361-362). Wells Fargo opposes the instant appeal, asking that this Court affirm the dismissal of the adversary proceeding. (*See* D.E. No. 5).[2]

For the reasons below, the Court AFFIRMS the Bankruptcy Court's order in relevant part.

1. **Background.** The Court provides the background of this appeal in summary fashion because it writes for the parties and has previously set forth the relevant factual and procedural background when resolving Hartman's previous appeals of other Bankruptcy Court orders. *See In re Hartman*, Nos. 15-4437 & 15-5060, 2016 WL 1183175, at *1-4 (D.N.J. Mar. 28, 2016). Briefly, on June 3, 2015, Hartman filed an adversary proceeding that, among other things, challenged the validity of Wells Fargo's claim against the property-at-issue based on New Jersey statute-of-limitation grounds. (*See* D.E. No. 4-1 at A059-074). Hartman's main point in the adversary proceeding (as well as in this appeal) is that Wells Fargo accelerated the mortgage loan on October 5, 2008 and, therefore, a six-year statute of limitations pursuant to N.J.S.A. § 2A:50-56.1 bars Wells Fargo from completing a foreclosure action as of October 5, 2014. (*See* D.E. No. 4 at 9-18; D.E. No. 4-1 at A062-069, A071, A120-121, A253-254; D.E. No. 6 at 3-5). The

---

governed by more formal rules of procedure than contested matters and must be instituted by the filing of a complaint.").

[2] During the pendency of this appeal, the Court became aware that a separate matter pending before the Court of Appeals for the Third Circuit would provide substantial guidance concerning the instant appeal. Accordingly, the Court reserved resolving this appeal pending a decision from the Third Circuit in that separate matter and required the parties to provide supplemental briefing after the Circuit's ruling. (*See* D.E. No. 7 (citing *In re: Gordon A. Washington*, U.S.C.A. Index No. 15-3210 (3d Cir. docketed Sept. 16, 2015))). After the Third Circuit recently issued its decision in the *In re: Gordon A. Washington* matter, the parties provided supplemental briefing. (*See* D.E. Nos. 8 & 9).

Bankruptcy Court, however, disagreed with Hartman. (D.E. No. 4-2 at A361-372). It rejected his contention that "the maturity date" in the mortgage "was changed to October 5, 2008, the date on which Wells Fargo issued the Acceleration Notice that declared the full amount of the Loan due, and that any action to commence a foreclosure against the [property-at-issue] following October 5, 2014 would be time barred" because "[t]his interpretation of the applicable limitations period is contrary to the plain language and legislative history of the statute." (D.E. No. 4-2 at A369-370 (footnote omitted) (citing N.J.S.A. § 2A:50-56.1)).

2. **Standard of Review.** A federal district court has jurisdiction over appeals "from final judgments, orders, and decrees" of a bankruptcy court. 28 U.S.C. § 158(a)(1). The district court must "review the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." *See In re United Health Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005) (citation and quotation marks omitted). If necessary, the court "must break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992) (citation and quotation marks omitted).

3. **N.J.S.A. § 2A:50-56.1.** This statute sets forth New Jersey's statute of limitations for foreclosures. In relevant part, it states that:

> An action to foreclose a residential mortgage shall not be commenced following the earliest of:
>
> a. Six years from the date fixed for the making of the last payment or the maturity date set forth in the mortgage or the note, bond, or other obligation secured by the mortgage, whether the date is itself set forth or may be calculated from information contained in the mortgage or note, bond, or other obligation, except that if the date fixed for the making of the last payment or the maturity date has been extended by a written instrument, the action to foreclose shall not be commenced after six years from the extended date under the terms of the written instrument . . .

> c. Twenty years from the date on which the debtor defaulted, which default has not been cured, as to any of the obligations or covenants contained in the mortgage or in the note, bond, or other obligation secured by the mortgage, except that if the date to perform any of the obligations or covenants has been extended by a written instrument or payment on account has been made, the action to foreclose shall not be commenced after 20 years from the date on which the default or payment on account thereof occurred under the terms of the written instrument.

N.J.S.A. § 2A:50-56.1(a), (c).

The Third Circuit recently issued a decision in the *In re: Gordon A. Washington* matter in which it addressed "the relationship between subsections 'a' and 'c' of the statute." *In re Washington*, No. 15-3210, 2016 WL 5827439, at *2 (Sept. 30, 2016). The Third Circuit stated that "[s]ubsection 'a' tells us to start with the 'maturity date set forth in the mortgage or the note'" and "contemplates that this date can be 'extended by a written instrument' but says nothing of the possibility that it can be shortened by a demand for full payment." *Id.* "By contrast, the wording of subsection 'c,' . . . contemplates a default followed by foreclosure . . . ." *Id.*

4. **Hartman's Contentions.** *First*, Hartman argues that the Third Circuit's *In re Washington* decision is non-precedential, not authoritative, and not binding on this Court. (D.E. No. 8 at 2-3). *Second*, Hartman contends that *In re Washington* "mis-constructs the plain language of subsection 'a' of the Statute, producing a result that is inconsistent with common sense and fails to account for the broader context of the Statute as a whole." (*Id.* at 4; *see also id.* at 10 ("[T]he Washington Opinion's flawed logic, which ignores the operation of the Statute, should not be followed by this Court.")).

In sum and substance, Hartman argues that the note-at-issue and mortgage permitted Wells Fargo to "shorten and re-calculate" the maturity date of the loan. (*See id.* at 5-6). Specifically, Hartman avers that the note-at-issue—which is "undisputedly a written instrument"—

"contemplates Wells Fargo sending yet another written instrument, a 'written notice' . . . requiring [Hartman] 'to pay immediately the full amount' upon default under the Note." (*Id.* at 6 (citing A088)). And Hartman asserts that the *In re Washington* decision "is built upon a false premise" because "the Statute contemplates that the maturity date of a mortgage or loan can effectively only be extended, but not shortened, by a written instrument." (*See id.* at 10).

5. **Wells Fargo's Contentions.** In response, *first*, Wells Fargo argues that the *In re Washington*'s—while not binding—is "strongly persuasive." (D.E. No. 9 at 2). It notes that this decision "very recently examined the language of N.J.S.A. § 2A:50-56.1—the same statute and language at issue here—and rejected the very argument now being made to this Court by Appellant." (*Id.* at 3). *Second*, Wells Fargo argues that Hartman's position is that "the note and mortgage authorize acceleration of the debt upon default and that, coupled with a separate document that accelerates the debt," can "determine a new maturity date within the meaning of subsection 'a.'" (*Id.* at 4). It contends that the problem with Hartman's position is that the "language of the statute contemplates that the ability to derive the last payment or maturity date must exist within the four corners of the documents"—and says "nothing about resort[ing] to extrinsic evidence on this point." (*Id.* at 4-5 (citing N.J.S.A. § 2A:50-56.1(a))). And Wells Fargo also argues that Hartman's position "ignores the language in subsection 'c' that sets a 20 year statute of limitations following an uncured default on a mortgage loan." (*Id.* at 5 (citing N.J.S.A. § 2A:50-56.1(c))). Wells Fargo posits that the "result unanimously reached by the Circuit Judges flows directly from the plain language of the statute and makes sense of all the language in the statute." (*Id.* at 6).

6. **Analysis.** The Court must look to the text of § 2A:50-56.1(a). *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) ("As in all statutory construction cases, we begin with

the language of the statute."). As the Third Circuit very persuasively set forth, § 2A:50-56.1(a) provides that the operative date for assessing the six-year limitations period is "the maturity date set forth in the mortgage or the note, bond, or other obligation secured by the mortgage" and that—although this date can be "extended by a written instrument"—there is nothing about the maturity date being shortened by a demand for full payment. *See* N.J.S.A. § 2A:50-56.1(a); *In re Washington*, 2016 WL 5827439, at *2.

Here, the relevant promissory note has a maturity date of October 1, 2035. (D.E. No. 4-1 at A086-092). As the parties do not appear to dispute, a default occurred and, on October 5, 2008, Wells Fargo issued a notice of intention to foreclose, thereby declaring default and accelerating the payments due for the outstanding debt. (*See* D.E. No. 4 at 3; D.E. No. 5 at 4-5; A120-121). Similar to the appellant's position in *In re Washington*, Hartman argues that this accelerated the note's maturity date—i.e., from October 2035 to October 2008. (*See, e.g.*, D.E. No. 4 at 20 ("Wells Fargo chose to accelerate the obligation underlying its Mortgage in 2008, thereby advancing the maturity date of the Mortgage to 2008.")).[3] And, again similar to the appellant's position in *In re Washington*, Hartman argues that Wells Fargo had six years from this purported new maturity date to foreclose, but it ran out of time in October 2014 pursuant to § 2A:50-56.1(a). (*See, e.g.*, D.E. No. 4 at 10, 14 ("By October 5, 2014, more than six (6) years passed since Wells Fargo accelerated its Mortgage . . . . Advancing, or acceleration, of the maturity date of a loan is the remedy that Wells Fargo elected under its own Mortgage and, thereby, Wells Fargo commenced the six year period from 'the maturity date set forth in the mortgage . . . ' . N.J.S.A. § 2A:50-56.l(a).")).[4]

---

[3] 2016 WL 5827439, at *2 ("Washington argues that the creditors, by demanding full payment, accelerated the note's maturity date from March 2037 to June 2007 (the date of his default). . . . He uses the . . . mortgage document and the . . . foreclosure filing as evidence of this purported acceleration.").

[4] 2016 WL 5827439, at *2 ("[Washington] therefore contends that, per subsection 'a,' the creditors had six years from the new maturity date to foreclose, meaning they ran out of time in June 2013.").

The note indisputably has a maturity date of October 2035. And the only thing that Hartman points to as purportedly altering this date is Wells Fargo's October 2008 notice of intention to foreclose in which Wells Fargo declared default and accelerated the debt. (*See* D.E. No. 4 at 3, 10; A120-121). The problem for Hartman is that nothing in § 2A:50-56.l(a) contemplates that the "maturity date" can be *shortened* by such a demand for payment. *See In re Washington*, 2016 WL 5827439, at *2 ("Subsection 'a' tells us to start with the 'maturity date set forth in the mortgage or the note.' It contemplates that this date can be 'extended by a written instrument' but says nothing of the possibility that it can be shortened by a demand for full payment.").[5]

After all, to find otherwise would not only require the Court to accept that Wells Fargo's October 2008 notice of intention to foreclose is a "written instrument" under § 2A:50-56.l(a), but that this purported "written instrument" may *shorten* the "maturity date." In other words, it appears that Hartman is asking the Court to construe the extension exception of § 2A:50-56.l(a)—which contemplates that a maturity date can be "extended by a written instrument"—as meaning that Wells Fargo's October 2008 notice (i.e., a notice of intention to foreclose that declared default and accelerated payments due for outstanding debt) *shortened* the "maturity date." *See* N.J.S.A. § 2A:50-56.l(a) ("except that if . . . the maturity date has been *extended by a written instrument*, the action to foreclose shall not be commenced after six years *from the extended date* under the terms of the written instrument" (emphases added); *In re Washington*, 2016 WL 5827439, at *2 (stating

---

[5] To be certain, the Court is not accepting the Third Circuit's recent non-precedential *In re Washington* decision as *binding*. Rather, as Hartman's own cited case law provides (*see* D.E. No. 8 at 2), although "non-precedential opinions of the Third Circuit are not binding upon this Court," the Court "is certainly permitted to consider and find persuasive their reasoning." *Kane v. Prof'l Med. Mgmt., Inc.*, No. 14-5063, 2016 WL 5012320 at *3 (D.N.J. Sept. 16, 2016) ("Accordingly, the Court does not consider itself bound to apply the holding in [a non-precedential Third Circuit opinion] as it would if that opinion had been precedential, but nevertheless identifies the obvious reality that a very recent non-precedential Third Circuit opinion analyzing identical language, in the context of an identical claim against the identical defendant, has the potential to be persuasive.").

that § 2A:50-56.l(a) "contemplates that this date can be 'extended by a written instrument' but says nothing of the possibility that it can be shortened by a demand for full payment").

The Court declines to rewrite § 2A:50-56.l(a) in this manner. Indeed, the New Jersey legislature could have included statutory text that Hartman wants inserted in § 2A:50-56.l(a) if it wanted to. *Cf.* N.J.S.A. § 12A:3-118(a) ("[A]n action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note *or, if a due date is accelerated, within six years after the accelerated due date*." (emphasis added)). Rather, the twenty-year limitations period under § 2A:50-56.1(c) applies because, quite simply, it covers a default followed by foreclosure. *See In re Washington*, 2016 WL 5827439, at *2 (accepting creditors' contention that they have 20 years after the default to foreclose pursuant to § 2A:50-56.1(c) because "the wording of subsection 'c,' . . . contemplates a default followed by foreclosure" and "the plain terms of the statute support the creditors' argument").

7. **Negligent Misrepresentation.** Hartman's adversary complaint also asserted a claim for negligent misrepresentation, seeking compensatory damages, punitive damages, and attorneys' fees and costs. (D.E. No. 4-1 at A072-073). The Bankruptcy Court dismissed this claim. (*See* D.E. No. 4-2 at A372-376). On appeal, Hartman asks this Court to reverse the Bankruptcy Court's dismissal of his negligent-misrepresentation claim (*see* D.E. No. 4 at 18-20; D.E. No. 6 at 5-8), which Wells Fargo opposes (D.E. No. 5 at 16-18).

But the Court is concerned over subject matter jurisdiction concerning this issue. *See In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1176 (3d Cir. 1996) ("Although neither party has challenged the bankruptcy and district courts' jurisdiction to adjudicate [the appellant's] claims,

we are obligated to do so on our own motion if a question thereto exists." (internal quotation marks and citation omitted)).[6]

As the U.S. Supreme Court has explained, generally,

> [T]he district courts of the United States have "original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). Congress has divided bankruptcy proceedings into three categories: those that "aris[e] under title 11"; those that "aris[e] in" a Title 11 case; and those that are "related to a case under title 11." § 157(a). District courts may refer any or all such proceedings to the bankruptcy judges of their district . . . .
>
> ….
>
> Bankruptcy judges may hear and enter final judgments in "all core proceedings arising under title 11, or arising in a case under title 11." § 157(b)(1). "Core proceedings include, but are not limited to" 16 different types of matters [in § 157(b)(2)]. Parties may appeal final judgments of a bankruptcy court in core proceedings to the district court, which reviews them under traditional appellate standards. See § 158(a); Fed. Rule Bkrtcy. Proc. 8013.

*Stern v. Marshall*, 564 U.S. 462, 473-475 (2011).[7]

In his adversary complaint, Hartman alleged that the adversary proceeding was "a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)." (D.E. No. 4-1 at A060). But it is not apparent to the Court—without further guidance from the parties—how the Bankruptcy Court and now this Court have jurisdiction over Hartman's state-law claim in light of the Court's prior ruling, *see In re Hartman*, 2016 WL 1183175, as well as the Court's ruling discussed above in connection with N.J.S.A. § 2A:50-56.1. *Cf. In re Velocita Corp.*, 169 F. App'x 712, 715 (3d Cir. 2006)

---

[6] In *In re Guild & Gallery Plus*, for example, the Third Circuit held that, "[b]ecause the courts below lacked subject matter jurisdiction to consider appellant's actions against the trustee, we will reverse the order of the district court . . . and remand this matter to the district court with instructions that it remand the matter back to the bankruptcy court with a direction that the bankruptcy court dismiss the complaint for lack of subject matter jurisdiction." 72 F.3d at 1173-74.

[7] *See also Stern*, 564 U.S. at 476 ("The detailed list of core proceedings in § 157(b)(2) provides courts with ready examples of such matters.").

("Bankruptcy court jurisdiction potentially extends to four types of title 11 matters, pending referral from the district court: (1) cases under title 11, (2) proceeding arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11. The first three types of jurisdiction are categorized as 'core' jurisdiction, while the remaining form of jurisdiction is referred to as 'related to' jurisdiction. . . . *Because negligent misrepresentation claims certainly can occur outside the context of bankruptcy, 'arising in' jurisdiction does not exist here*." (emphasis added) (internal quotation marks and citations omitted)).[8]

Accordingly, the Court hereby orders the parties to show cause on the issue of jurisdiction over the appeal concerning Hartman's negligent-misrepresentation claim.

8. An appropriate Order accompanies this Memorandum Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

[8] *See also In re RFE Indus.*, 65 F. App'x 405, 408 (3d Cir. 2003) ("All that remains . . . is a dispute which originated as an adversary proceeding, detached from the bankruptcy case that gave rise to it. The conclusion of the bankruptcy case caused the bankruptcy basis for federal jurisdiction to cease to exist. There is no independent source of jurisdiction under which federal subject matter jurisdiction exists, inasmuch as the dispute is between New Jersey citizens who are not diverse and relates solely to state law causes of action.").